

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-591

| | |
|---|---|
| EDNA PAULINE BROWN<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br>APPELLEE | **Opinion Delivered** February 1, 2017<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT,<br>FORT SMITH DISTRICT<br>[NO. 66PR-16-131]<br><br>HONORABLE ANNIE HENDRICKS,<br>JUDGE<br><br>AFFIRMED |

### LARRY D. VAUGHT, Judge

Edna Brown appeals the Sebastian County Circuit Court's order placing her in the long-term protective custody of the State. On appeal, she argues that her family was not provided notice of the proceedings and her attorney was erroneously prevented from cross-examining a witness about Edna's assets. Because neither issue is preserved for appellate review, we must affirm.

This adult-protective-services case was opened when Edna was hospitalized on March 4, 2016, following a car accident.[1] At the hearing, nurse Louise Spaunhurst testified that she had interviewed Edna at the hospital and determined that Edna had a mild mental impairment.

---

[1]As a result of these events, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody on March 9, 2016, alleging that Edna was an endangered or impaired adult pursuant to the Adult Maltreatment Custody Act, Arkansas Code Annotated section 9-20-117 (Repl. 2015). On March 17, following a hearing, the court found that probable cause existed based on Edna's diagnosis of delirium with "sundowning" and the fact that she had multiple accidents but planned to continue to drive.

SLIP OPINION

She also had significant facial bruising, a hematoma on her forehead, and bruises on her leg. Spaunhurst testified that Edna had wrecked her Dodge Spirit and had then, the same day, totaled her Toyota Tacoma by driving it into a deep ditch. Spaunhurst stated that the treating physician was concerned about Edna, so after she had completed treatment at Mercy Hospital, he transferred her to Sparks Senior Care for further evaluation. She was diagnosed with a severe neurocognitive disorder.

Dr. Phillip Elangwe's physician report was introduced. In the report, the doctor states that Edna suffers from vascular dementia, a mood disorder, and confusion and that she requires 24-hour supervision in a secure, structured environment and licensed staff to administer her medications. The report states that Edna is mentally impaired and does not have the mental capacity to protect herself from abuse, neglect or exploitation and that the doctor recommends that she remain in the protective custody of DHS.

Spaunhurst testified that Edna has a nephew and his wife but that they could not provide the level of care needed. She also testified that Edna receives $1,058 per month in Social Security payments, $224.70 per month in Arkansas Teacher Retirement System benefits, has $11,404.96 in her checking account, and has a savings account containing $4,820.96. She also owns the Dodge Spirit, which was damaged in the accident, and the Toyota Tacoma, which was totaled. Spaunhurst testified that her recommendation would be for the Spirit to be appraised and sold. Edna was due to receive $4,247 from Farmers Insurance for the totaled truck.

Nurse Spaunhurst then testified that she recommended that Edna be placed in Fort Smith Health and Rehabilitation, previously known as Highlands. She stated that, based on

the physician recommendation, she believed that this placement would be the least restrictive environment in which Edna could get the required care.

On cross-examination, Spaunhurst testified that Edna's family was present in the courtroom. Edna's attorney then addressed the court before cross-examining Spaunhurst about Edna's assets:

> MS. PRYOR: And, Your Honor, based on your ruling in PR-2016-147, is it my understanding that cross-examining this witness on the assets–
>
> THE COURT: Well, I didn't get an objection yet, so I don't know the answer to that question. Ms. Pryor, if you ask about her finances and I get an objection, I'll rule at that point in time.
>
> MS. PRYOR: Have you investigated what other finances she might have for her care?
>
> MS. GOFF: Object to the question. Outside the scope of representation of liberty interest.
>
> THE COURT: All right, based upon that objection, the Court will cite 9-20-108, jurisdiction (f)(1) wherein the Public Defender Commission as counsel "shall represent the maltreated adult as to the issue of deprivation of liberty, but not with respect to issues involving property, money, investments, or other fiscal issues."
>
> MS. PRYOR: And that includes cross-examination for this particular witness and the assets that she testified about?
>
> THE COURT: I am going to sustain the objection based upon the statute that I just read into the record, Ms. Pryor.
>
> MS. PRYOR: Yes ma'am, thank you.

The court then spoke directly to Edna, who asked how much this proceeding would cost her. She stated that "I have very little money" and said that she was not able to work. Edna testified that she loved her home and wanted to stay in her home. She said that Fort Smith Health and Rehab is "okay" and had helped her quite a bit.

Following a closing argument by DHS counsel,[2] the court addressed Edna's family in the back of the courtroom, asking "Do you all in the back have anything to add? Well, you've come here so I thought maybe I'd ask you."

The court found by clear and convincing evidence that DHS was placing Edna in the least-restrictive environment to meet her needs and protect her health and safety, that she had no known caregiver, and that the income she receives should be redirected to the trust account of the facility in which she was being placed. The court ordered that the Dodge Spirit be sold and that the proceeds from the sale, the insurance check for her truck, and the balance of her bank accounts should all also be placed in the facility's trust account.

Edna's attorney refused to sign the proposed precedent, based in part on the fact that it contained statements regarding Edna's finances and assets, and the court had prevented counsel from cross-examining on that point. This timely appeal followed.

We review probate matters de novo and will not reverse unless the circuit court's findings are clearly erroneous, giving due regard to the circuit court's superior opportunity to determine credibility of witnesses. *Doran v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 505, at 3–4, 442 S.W.3d 868, 870. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Middlebrook v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 161.

---

[2]Edna's counsel did not make a closing statement. DHS's closing statement was essentially a discussion with the court about the specifics of the proposed precedent.

The Adult Maltreatment Custody Act, Arkansas Code Annotated section 9-20-102, permits the court to order long-term protective custody of an adult if it determines that (1) the adult lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an imminent danger to his or her health or safety; (2) the adult is unable to provide for his or her own protection from maltreatment, and (3) the court finds that the adult is in need of placement. All three elements must be proven by clear and convincing evidence. Ark. Code Ann. § 9-20-117(c)(3).

On appeal, Edna argues that the Adult Maltreatment Custody Act requires that notice of the long-term custody hearing be given to "the next of kin of the respondent whose names and addresses are known to petitioner," in the form mandated by Arkansas Code Annotated section 28-1-112, which governs notice in probate cases, and that such notice was not provided to her family in this case. However, this issue was never raised before the circuit court and is therefore not preserved for our review. It is well established that failure to raise an issue before the circuit court is fatal to an appellate court's consideration of that issue on appeal.[3] *Hall v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 245, 413 S.W.3d 542.

Edna also argues that the lack of notice to her family meant that DHS could not prove that there was no caregiver willing and able to provide the needed care (which she does not dispute is 24/7 professional care). Again, this argument was not made to the circuit court and is not preserved for appellate review. To the extent that this argument amounts to a challenge to the sufficiency of the evidence, Edna has neither provided legal authority for her point nor

---

[3]While this issue may have been mooted by the presence of Edna's family in the courtroom during the hearing, our record is silent on the specific identities of those family members and the notice that they and others were provided.

made a persuasive argument for reversal. The Arkansas Supreme Court has held that appellate courts will not consider an issue if the appellant has failed to cite to any convincing legal authority in support of his or her argument. *Walters v. Dobbins*, 2010 Ark. 260, at 7, 370 S.W.3d 209, 213. Moreover, the failure to adequately develop a point, either legally or factually, is reason enough to affirm the circuit court. *Id.* at 7, 370 S.W.3d at 213.

Edna's only other point on appeal is a challenge to the court's ruling that she could not cross-examine Spaunhurst as to any additional assets Edna may have beyond those discussed during the nurse's testimony on direct examination. This argument fails for multiple reasons. First, it is not preserved. When Edna's counsel drew the objection, she provided no responding argument as to why the testimony should be permitted. When the court ruled against her, she simply said "thank you." At no time did she present the court with either of the arguments she raises on appeal, which are that the court misinterpreted the statute and, alternatively, that the statute as interpreted is unconstitutional. The Arkansas Supreme Court has long held that an appellant must raise an argument and obtain a ruling on even constitutional issues in the circuit court in order to preserve the issue for appeal. *See Raymond v. State*, 354 Ark. 157, 162–63, 118 S.W.3d 567, 571 (2003). Issues raised for the first time on appeal will not be considered because the circuit court never had an opportunity to make a ruling. *Johnson v. State*, 2009 Ark. 460 (per curiam) (citing *Green v. State*, 362 Ark. 459, 209 S.W.3d 339 (2005)).

Second, we will not reverse a ruling on the admission of evidence absent a showing of prejudice, *see Davis v. State*, 350 Ark. 22, 38, 86 S.W.3d 872, 882 (2002), and Edna cannot demonstrate prejudice from the court's exclusion of the testimony. This is because (1)

Spaunhurst had already testified at length about Edna's finances, (2) Edna stated that she had "very little money," and (3) Edna's attorney never proffered the testimony at issue. Arkansas Rule of Evidence 103(a)(2) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and, in case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so the appellate court can review the decision, unless the substance of the evidence is apparent from the context. *Wymer v. Hutto*, 2014 Ark. App. 497, 442 S.W.3d 912. The failure to proffer evidence so that the appellate court can determine whether prejudice resulted from its exclusion precludes review of the evidence on appeal. *Parkerson v. Brown*, 2013 Ark. App. 718, 430 S.W.3d 864. As a result, Edna cannot demonstrate prejudice from the court's exclusion of testimony about additional assets she may have.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Dusti Standridge*, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.