N. MARK KLAPPENBACH, Judge
Appellant Charles Joslin appeals the October 2018 order of the Crawford County Circuit Court that terminated his parental rights to his three daughters, KJ (born in 2002), AJ (born in 2004), and EJ (born in 2006).[1] Joslin does not challenge the circuit court's finding that the Department of Human Services (DHS) proved multiple statutory grounds on which to terminate his parental rights. On appeal, Joslin challenges (1) the circuit court's finding that termination of his parental rights was in the children's best interest and (2) the circuit court's evidentiary ruling that Joslin would not be permitted to call EJ as a witness during the termination-of-parental-rights hearing. We affirm.
Pursuant to Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2017), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that (1) there are one or more statutory grounds and (2) it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will be adopted and the potential harm to the health and safety of the child if returned to the custody of the parent. We review termination-of-parental-rights orders de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous.
*28 Harjo v. Ark. Dep't of Human Servs. , 2018 Ark. App. 268, 548 S.W.3d 865. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. Id. We must defer to the superior position of the circuit court to weigh the credibility of the witnesses. Ewasiuk v. Ark. Dep't of Human Servs. , 2018 Ark. App. 59, 540 S.W.3d 318. On appellate review, this court gives a high degree of deference to the circuit court, which is in a far superior position to observe the parties before it. Id. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Id.
In this case, the circuit court found that there were multiple statutory grounds on which to terminate Joslin's parental rights, which Joslin does not challenge on appeal.[2] The circuit court also found that it was in these children's best interest to terminate parental rights. Under the umbrella of the children's best interest, the circuit court specifically considered that the girls were adoptable and found that there was potential harm to the girls if their father was given custody. Joslin concedes that the circuit court technically complied with the mandate to consider these two best-interest factors. Joslin argues, however, that the overall evidence does not support that it is in the best interest of these girls to terminate their father's rights and extinguish the familial relationships. This, he argues, goes against the statutory purpose in the Juvenile Code to "preserve and strengthen the juvenile's family ties when it is in the best interest of the juvenile" to do so. Ark. Code Ann. § 9-27-302(2)(A) (Repl. 2015). We are not left with a distinct and firm impression that the circuit court made a mistake in its findings on the children's best interest.
KJ, AJ, and EJ went into DHS custody after Joslin's arrest in May 2017 for domestic battery, domestic assault, public intoxication, and interfering with emergency communications. He was arrested because he hit all the girls, and he dragged KJ on the floor by the hoodie she was wearing, which choked KJ.[3] Joslin had custody of AJ and EJ, so DHS took emergency custody of those two children. Joslin's ex-wife had custody of KJ, but DHS took emergency custody of KJ in June 2017 because the mother was using drugs, she left KJ with improper supervision, and the home was in squalor. In July 2017, the paternal grandmother petitioned to intervene, asserting she had been CJ's primary caretaker for most of CJ's life, that her parents had a very limited relationship with CJ, and that CJ should stay in the only home she had ever known.[4]
KJ was placed in the foster care of Glen Jorgensen and his wife, EJ was placed with her maternal aunt Janice Stanier, and AJ was placed sometimes with the Jorgensens and sometimes in a sub-acute therapeutic facility. Over the next year, Joslin was provided reunification services. Among other things, Joslin was ordered to *29 clear up his legal issues, attend parenting and anger-management classes, go to drug rehabilitation, provide child support, attend supervised visits, and cooperate with DHS.
By May 2018, it was apparent that the mother was not going to try to reunify with the girls, and Joslin had made minimal progress. In the May 2018 permanency-planning hearing, the circuit court authorized DHS to file a petition to terminate parental rights, and it set a concurrent goal of permanent placement with a fit and willing relative and guardianship for one or more of the children. The circuit court found that Joslin was not making progress; he continued to show inappropriate parenting techniques when he visited his children; he was discharged from an inpatient treatment facility after an altercation with another resident; he failed to contact DHS after his discharge to reinstate a visitation schedule; he did not submit to drug screens; he did not have stable housing or a stable job; he had been incarcerated multiple times; and he was uncooperative with DHS.
In June 2018, DHS filed its petition to terminate parental rights. The initial September 2018 setting for the termination hearing was continued for three weeks at Joslin's request so that he could complete a different drug-rehabilitation program. The hearing was conducted approximately sixteen months after the girls had been taken into DHS custody.
Joslin was still in drug rehabilitation; he had no home; he had been in jail multiple times over the course of this case; he pleaded guilty to domestic battery of KJ and to violating his ex-wife's no-contact order. Joslin agreed that he had not completed an array of the court's requirements, including domestic-violence classes, drug rehabilitation, or parenting classes. Joslin said that his drug of choice was opiate pills, but he had not used drugs for six weeks. He had attended some therapy and had begun taking an antidepressant and anti-anxiety medication, but he acknowledged that controlling his anger had been a big issue for him. Joslin is a carpenter and believed that he could always find employment. Joslin testified that his girls have a close relationship with his mother and their younger sister CJ.
Joslin's rehabilitation-facility case manager testified that Joslin had been in his facility for about three weeks and had embraced his treatment plan. The case manager expected him to complete the program and then move into a sober environment, hopefully continuing with outpatient therapy.
The caseworker testified that Joslin had been kicked out of drug rehabilitation twice before starting his most recent attempt. His biggest big concerns about Joslin were his aggression, domestic violence, anger issues, and drug use, but Joslin had not completed any services nor did he have a job or home. The caseworker believed all the girls were adoptable with no barriers to adoption, but he said that AJ would continue to need mental-health care. He thought that the Jorgensens and the aunt were interested in adopting the children. With Joslin having failed to complete any services, DHS wanted to give the girls a chance at permanency.
Joslin wanted to call EJ as a witness to establish that she was bonded to her little sister and to her extended biological family. According to the attorney ad litem, the children did not want to testify, and the circuit court disallowed Joslin from calling EJ to the stand. KJ's foster father testified, however, that EJ came to visit her sisters at his house, the sisters went to see EJ at her aunt's house, the sisters sometimes walked to their grandmother's house to see CJ, and he had all the girls at his *30 house for four days over the summer. KJ's foster father intended to continue to allow them to see each other and maintain their bonds with each other. EJ's aunt, who had fostered EJ the entire DHS case, testified that EJ still wanted a relationship with her father and mother.
Joslin's attorney argued that although Joslin was not quite ready to have his daughters back, he would be ready within a few months. DHS and the attorney ad litem were against continuing this case after sixteen months because the girls needed permanency. The circuit court terminated Joslin's parental rights.
Joslin argues on appeal that the circuit court erred in finding termination of his parental rights to be in these children's best interest. Joslin contends that he made progress in his mental health, he had almost completed drug rehabilitation, EJ and KJ wanted to maintain a relationship with him, the girls had significant family bonds with their blood relatives, and he could provide financial support to the girls. Joslin asserts that there were less drastic options, such as permanent custody or guardianships, that would better serve these girls and preserve the family relationships.
Citing Caldwell v. Arkansas Department of Human Services , 2010 Ark. App. 102, 2010 WL 374432, and Lively v. Arkansas Department of Human Services , 2015 Ark. App. 131, 456 S.W.3d 383, Joslin contends that the best-interest analysis cannot be addressed without fully considering the relative-placement issue. In Caldwell and Lively , termination was not in those children's best interest because the other biological parent had custody, so termination of the non-custodial parent's rights would not achieve permanency for the children. In contrast, this case is a two-parent termination case, so Joslin's argument is misplaced. See also Heath v. Ark. Dep't of Human Servs. , 2019 Ark. App. 255, 576 S.W.3d 86 ; Fisher v. Ark. Dep't of Human Servs. , 2019 Ark. App. 39, 569 S.W.3d 886.
Furthermore, the children are still in the custody of DHS, not relatives. EJ was placed with her maternal aunt by DHS, and the mother's parental rights have already been terminated, legally severing that familial bond. AJ was not placed with family. KJ was placed with Jorgensen, who is a former employer of Joslin. None of these placement options are with legal relatives. See Scrivner v. Ark. Dep't of Human Servs. , 2016 Ark. App. 316, 497 S.W.3d 206.
On de novo review of this record, we cannot say that the circuit court clearly erred. The purpose of the termination-of-parental-rights statute, Ark. Code Ann. § 9-27-341(a)(3), is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time, as viewed from the juvenile's perspective.
Joslin's inability or unwillingness to get his emotional, mental, criminal, and drug issues in check within a reasonable time support the trial court's finding that termination was in these children's best interest. Joslin failed to complete the steps necessary to reach the case-plan goals that were intended to help him become the safe, stable parent that these children needed. A parent's past behavior is often a good indicator of future behavior. Ewasiuk, supra. The mother's parental rights have been extinguished. The current caregivers have expressed an interest in adopting the girls, which cannot be achieved absent termination of Joslin's parental rights. Given the *31 deference we give to the circuit court to evaluate the evidence, the testimony, and the best interest of children, we hold that the circuit court did not clearly err in its best-interest finding as to KJ, AJ, and EJ.
Joslin's other argument on appeal is that the circuit court abused its discretion by not permitting him to call EJ as a witness so that she could explain her attachment to her paternal grandmother, her little sister CJ, and to members of her mother's family. Joslin wanted to demonstrate that preserving those familial bonds was in the girls' best interest. The attorney ad litem objected because EJ did not want to testify but offered to stipulate that the girls love Joslin and were interested in some sort of ongoing family contact. The attorney ad litem added that other witnesses were available to discuss ongoing family contact. The circuit court ruled that EJ would not be called to testify.
Although the children's attorney asserts to us that Joslin's argument is not preserved for failure to proffer EJ's testimony, we disagree. The circuit court specifically asked Joslin's counsel to provide an offer of proof, and counsel proffered the content of EJ's expected testimony. See Brown v. Ark. Dep't of Human Servs. , 2017 Ark. App. 67, 511 S.W.3d 895 ; Swinford v. State , 85 Ark. App. 326, 154 S.W.3d 262 (2004).
Moving to the merits, we review a circuit court's ruling on admissibility of evidence under a manifest-abuse-of-discretion standard. Olivares v. Ark. Dep't of Human Servs. , 2013 Ark. App. 94, 2013 WL 543325. Even if there is judicial error in an evidentiary ruling, we will not reverse unless the appellant demonstrates prejudice. Hooks v. Ark. Dep't of Human Servs. , 2017 Ark. App. 687, 536 S.W.3d 666. Joslin fails to demonstrate reversible error.
The stipulations offered by the attorney ad litem and the testimony of Jorgensen, Stanier, and Joslin himself adequately covered the testimony expected from EJ. Exclusion of evidence is not prejudicial if the same evidence was introduced through another source and was before the trier of fact for its consideration. Howard v. Ark. Dep't of Human Servs. , 2017 Ark. App. 68, 512 S.W.3d 676. It was undisputed that the girls wanted to maintain family contact. EJ's testimony would have been cumulative, so no prejudice resulted from excluding EJ's testimony.
We affirm the termination of Joslin's parental rights.
Affirmed.
Whiteaker and Vaught, JJ., agree.

Joslin's youngest daughter, CJ (born in 2012), was initially a part of this DHS case. The circuit court granted permanent custody of CJ to the paternal grandmother and closed the case as to CJ, so CJ is not a party to this appeal. Rebecca Joslin, the biological mother, did not meaningfully participate in this DHS case, so her parental rights were terminated; she did not appeal.

Those grounds included (1) twelve months out of the home and failure to remedy, (2) willful failure to provide support or maintain contact, (3) abandonment, (4) physical abuse, (5) subsequent other factors, and (6) aggravated circumstances, meaning little likelihood of reunification with additional services. See Ark. Code Ann. § 9-27-341(a)(3)(B) (Supp. 2017).

These allegations were deemed true at the July 2017 adjudication hearing. Joslin later pleaded guilty to domestic battery.

The circuit court permitted intervention, and by October 2017, the grandmother was granted permanent custody of CJ.