Cite as 2019 Ark. App. 399

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-19-215

| | |
|---|---|
| CLAYTON CARSON | **Opinion Delivered:** September 18, 2019 |
| APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT |
| V. | [NO. 43JV-17-143] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE BARBARA ELMORE, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Clayton Carson appeals from the order of the Lonoke County Circuit Court terminating his parental rights to his daughter, I.C. For the reasons set forth below, we affirm.

### I. *Background*

On May 4, 2017, the child-abuse hotline received a report of child maltreatment due to substance misuse against Cathryn Herron, I.C.'s mother.[1] Another call was received on May 16, 2017, from Dr. Farst at Arkansas Children's Hospital, stating that ten-month-old I.C. had been transported to the hospital by ambulance due to breathing difficulties, but the family left with the child prior to discharge. The Arkansas Department of Humans Services

---

[1]Herron's parental rights to I.C. were also terminated; however, she is not a party to this appeal.

(DHS) opened a protective-services case on the family for medical neglect. For the next several months, family service worker (FSW) Jackson attempted to make contact with Herron; however, her attempts were unsuccessful. On August 7, 2017, Herron's mother contacted FSW Jackson stating that Herron had dropped I.C. off at her home and had expressed a desire to "sign over her rights" to I.C.; nevertheless, guardianship papers were not executed. On August 31, 2017, another family member, Elizabeth Brown, contacted DHS claiming that Herron had signed her rights to I.C. over to her and her husband. Upon inspection, the documents, though notarized, were determined not to be legally binding. Consequently, DHS exercised a seventy-two-hour hold on I.C. due to lack of a legal caretaker. On September 1, 2017, DHS filed a petition for emergency custody and dependency-neglect. Attached to the petition was an affidavit in which appellant Clayton Carson was identified as the legal and/or putative father of I.C. The affidavit further detailed his address as Wrightsville Prison. The circuit court issued the ex parte order placing I.C. in the custody of DHS.

Carson was present at the probable-cause hearing held on September 5, 2017, at which Herron stipulated to the emergency conditions necessitating removal. Carson was adjudicated the father of I.C. and was ordered to complete the classes available to him in prison.

I.C. was adjudicated dependent-neglected on October 10, 2017, based on the parties' stipulation that she had no legal caregiver. The goal of the case was established as reunification, and Carson was granted supervised visitation with I.C. on the first and third weekends of each month at the Wrightsville Unit of the Arkansas Department of Correction

2

(ADC) for an hour and a half, at the discretion of the facility. Carson was ordered to participate in all classes available to him at ADC; cooperate with DHS and follow the case plan; not use or possess controlled substances; submit to random drug screens and provide a proper sample when requested to do so; obtain a drug/alcohol assessment and follow its recommendations; successfully complete a drug-treatment program and follow all discharge recommendations if the drug-and-alcohol assessment recommends it; and submit to a hair-follicle drug screen at the request of DHS.

The circuit court held a review hearing on January 23, 2018, at which Carson, who remained incarcerated at the Wrightsville Unit, was not present. The court found that I.C. continued to need services and ordered that she remain in the custody of DHS. While the court noted that Carson had been unable to exercise visitation with I.C. due to disciplinary action for fighting at the prison, the court authorized visitation for an hour every other week when he is off disciplinary restrictions, subject to the prison's discretion. The circuit court again ordered Carson to follow the case plan and continued the previous court orders.

Carson was absent from the second review hearing that was held in April 2018. At the hearing, the circuit court suspended Carson's visitation with I.C. due to Carson's transfer to a prison facility in Texas. James and Susan Carson (Carson's grandparents) were granted visitation with I.C. every other Saturday from 10:00 a.m. to 5:00 p.m. and were specifically prohibited from taking I.C. to visit Carson while she was in their care. The court continued its previous orders and ordered Carson to follow the case plan.

Although he had been moved to a prison facility in Pine Bluff, Carson was not present on July 24, 2018, for the third review hearing, at which the circuit court again

continued its previous orders and noted, there would be "no visitation w/the father at this time."

On September 4, 2018, the circuit court held a permanency-planning hearing at which it authorized a plan for adoption with DHS filing a petition for termination of parental rights. The court found that DHS had provided meaningful services, yet Carson had not made significant measurable progress, specifically noting that Carson had been incarcerated throughout the pendency of the case and had received twelve disciplinary actions and had been sent to an out-of-state prison due to his continued fighting.

At the November 16, 2018 termination-of-parental-rights hearing, the circuit court terminated Carson's parental rights to I.C. on multiple grounds and found that termination was in her best interest. From that termination–of–parental–rights order, Carson now appeals.

## II. *Standard of Review*

This court reviews termination-of-parental-rights cases de novo.[2] Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established.[3] The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous.[4] A

[2]*Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[3]*Tillman v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 119.

[4]*Id.*

finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.[5] In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.[6]

To terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted, and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[7] The circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.[8] Proof of only one statutory ground is sufficient to terminate parental rights.[9] Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well–being of the child.[10] The intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to

---

[5]*Id.*

[6]*Id.*

[7]Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp. 2017).

[8]Ark. Code Ann. § 9–27–341(b)(3)(B).

[9]*Tillman*, *supra.*

[10]*Id.*

the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[11]

### III. *Statutory Grounds*

The circuit court terminated Carson's parental rights based on two statutory grounds: failure to remedy by the noncustodial parent,[12] and sentenced in a criminal proceeding for a substantial period of the juvenile's life (incarceration ground).[13] While Carson makes a vague argument regarding the unfairness of applying the incarceration ground, we need not address it here because he failed to attack the circuit court's alternate ground, failure to remedy by the noncustodial parent. When an appellant fails to challenge the circuit court's independent, alternative ground for its ruling, we will not reverse.[14]

### IV. *Best Interest*

In determining whether termination is in the best interest of a child, the circuit court must consider the entire history of the case and all relevant factors, including the likelihood that the child will be adopted and the potential harm that would be caused by returning the child to the custody of the parent.[15] Here, Carson does not attack the adoptability prong

---

[11]Ark. Code Ann. § 9–27–341(a)(3).

[12]*See* Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(b)*.

[13]*See* Ark. Code Ann. § 9–27–341(b)(3)(B)(viii).

[14]*See Casarreal v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 622.

[15]*Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251.

or the potential-harm prong of the circuit court's best-interest finding. Because Carson failed to properly develop his best-interest argument, it is not preserved for review.

We affirm the circuit court's order terminating Carson's parental rights to I.C.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Davidson Law Firm*, by: *Stefan K. McBride*, for appellant.

*Callie Corbyn*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.