Cite as 2022 Ark. App. 175

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-21-511

| | |
|---|---|
| | **Opinion Delivered** April 20, 2022 |
| TINA SCHULTZ<br><br>APPELLANT | APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. 08EJV-19-068] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | HONORABLE THOMAS E. SMITH, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Tina Schultz appeals a Carroll County Circuit Court order terminating her parental rights to three of her children, NMFS, NMS, and JLS.[1] She argues that there was insufficient evidence to support either the statutory grounds or the best-interest findings and that the court erred in the admission of the CASA report. We find no merit in her arguments and affirm.

I. *Facts and Procedural History*

---

[1]Tina has nine other children who are not involved in this litigation. Tina's mother has guardianship over four of the children, and four others were adopted. The youngest child is still in Tina's custody.

Tina Schultz and Darin Sharpe are the biological parents of NMFS, NMS, and JLS.[2] In May 2019, the Arkansas Department of Human Services opened a protective-services case after NMS received burns while under Darin's supervision. Darin, who was high on methamphetamine when the incident occurred, was arrested and jailed, resulting in a no-contact order in place between him and NMS.

In August 2019, while protective services were being provided, Tina's family contacted the Department with concerns regarding the safety of the children. They reported that Tina was using methamphetamine, that she had recently left the children in the care of a registered sex offender after an attempted suicide, and that NMFS had "red welts" on her vagina.[3] The Department further learned that a family member had been providing clear urine for Tina so that she could retain custody of the children in the protective-services case. Darin was not available as a placement alternative due to his continued incarceration and pending no-contact order. As a result, the Department exercised a seventy-two-hour hold on the children and filed a dependency-neglect petition.

---

[2]At both the time of removal and at termination, Tina was married to Jesse Lee Schultz. DNA results, however, confirmed that Darin Sharpe is the biological father of all three children, and Jesse was removed as a party from the case. An adjudication order subsequently held that Darin is the biological and legal father of the children. Darin voluntarily consented to the termination of his parental rights and has not appealed the termination order.

[3]A subsequent physical exam of NMFS for abuse was inconclusive. However, JLS's exam raised concerns of possible sexual abuse.

In October 2019, the court found the children dependent-neglected as a result of neglect and parental unfitness. More specifically, the court found that Tina had been committed for mental-health reasons as a result of an attempted suicide; had left her children with a registered sex offender who was using illegal drugs; had failed to get appropriate medical treatment for NMS; and that both NMS and JLS tested positive for methamphetamine. The court ordered the children to remain in the custody of the Department, ordered the Department to provide services, and set the goal of the case as reunification with a concurrent goal of adoption.[4]

The court continued to monitor the progression of services and parental compliance. At review hearings, the court found that Tina was in partial compliance with the case plan, found that the Department had made reasonable efforts to provide services and achieve reunification, and ordered that custody of the children would continue with the Department.

The court conducted its first permanency-planning hearing in June 2020. The court found that Tina was complying with the case plan, was making significant measurable progress, and was diligently working toward reunification. As a result, the court ordered trial placement with Tina. The court conducted a second permanency-planning hearing in August

---

[4]In the October adjudication hearing, the court found that Darin was still incarcerated on a charge of endangering the welfare of a minor due to NMS's burns and that he was unfit due to drug use and homelessness; but a separate adjudication as to Darin was held in December 2019.

2020, wherein it continued the trial placement with Tina. The trial placement ended, however, in September 2020 after the Department discovered that Tina had lost her driving privileges, had failed to take the children to scheduled counseling sessions, and was sharing a residence with Quintin Hays, who had a pending aggravated-robbery charge against him.[5] Tina was advised that she could not regain custody of her children if she continued to live with Quintin.

In February 2021, the court conducted its third permanency-planning hearing.[6] The court found that the Department had made reasonable efforts to provide family services and had provided services, such as individual therapy, a drug-and-alcohol assessment, random drug testing, and mental-health and substance-abuse counseling. The court further recognized that Tina had participated in these services provided by the Department and had also obtained her driver's license. However, she had been inconsistent with her employment; had attended some, but not all, of the child/parent psychotherapy sessions; and had continued to reside with Quintin. Furthermore, the court noted that her house was cluttered and unclean and not suitable for the children. As a result, the court found that Tina had not shown significant progress toward the case plan and changed the goal of the case from reunification to termination of parental rights.

---

[5]Tina was residing with her sister; her sister's children; and Hayes, her sister's husband.

[6]The delay in the proceedings is attributable to several continuances due to COVID-19 and the death of one of the attorneys.

4

In April 2021, the Department and the attorney ad litem (AAL) filed a joint petition to terminate Tina's parental rights alleging three statutory grounds for termination grounds as to Tina: twelve-month failure to remedy; subsequent other factors; and aggravated circumstances—little likelihood of successful reunification.[7] The court conducted a hearing on the petition, which was held over a period of two days in June and July 2021. The court heard from numerous witnesses concerning the services provided by the Department as well as Tina's stability and compliance with the case plan. Much of the testimony and evidence centered on Tina's ongoing relationship with Darrin and her parental choices concerning Quentin.

After hearing all the evidence, the circuit court entered an order terminating Tina's parental rights. The court found that it was in the best interest of the children to terminate Tina's parental rights and that the Department had presented sufficient evidence to support all three statutory grounds for termination: twelve-month failure to remedy; subsequent other factors; and aggravated circumstances—little likelihood of successful reunification. Tina filed a timely appeal of the termination order.

II. *Standard of Review*

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a

---

[7]The Department and the AAL had previously filed a joint petition for termination of parental rights in September 2020, but that petition was dismissed.

firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health &*

*Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews

termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling

unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although

there is evidence to support it, the reviewing court on the entire evidence is left with a

definite and firm conviction that a mistake has been made. *Id.* In determining whether a

finding is clearly erroneous, an appellate court gives due deference to the opportunity of the

circuit court to judge the credibility of witnesses. *Id.*

III. *Analysis*

A. Statutory Grounds

In order to terminate parental rights, a circuit court must find by clear and convincing

evidence one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

Tina's first challenge is to the sufficiency of the evidence to support the statutory grounds

for termination, claiming the Department failed to make reasonable efforts to rehabilitate

the family. More specifically, she argues that not only did the Department not make

reasonable efforts to support rehabilitation, it actually undermined her progress toward

rehabilitation by focusing on the negative and not identifying the positive, including her

lengthy sobriety. Her argument fails for two reasons.

First, the circuit court determined that all three statutory grounds pled by the

Department had been proved and supported termination. Tina, however, challenges only

the subsequent-other-factors ground for termination. We have held that only one ground

6

must be proved to support termination, *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918, and when, as here an appellant fails to challenge the circuit court's independent, alternative grounds for its ruling, we will not reverse. *Carson v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 399.

Second, the court terminated on the ground of aggravated circumstances. The ground of aggravated circumstances does not require the Department to prove that meaningful services toward reunification were provided. *See Cloninger v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 282; *Willis v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 559, 538 S.W.3d 842. Thus, her argument regarding the Department's alleged failure to provide services does not affect the court's finding on this statutory ground.

In the Juvenile Code, "aggravated circumstances" exist when "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]" Ark. Code Ann. § 9-27-303(6)(A) (Supp. 2021). Here, the children were removed from Tina's care as a result of a finding of parental unfitness. During the twenty-four months that the children were in the custody of the Department, Tina was provided a plethora of services. While Tina argued below and continues to argue on appeal that the Department and the CASA volunteer actively worked against rehabilitation, the circuit court repeatedly entered orders prior to the termination hearing that the Department had made reasonable efforts toward family reunification, albeit over counsel's objection. The court was presented further evidence that the children had been in the Department's custody for the majority of their lives, that the children had to be removed from Tina's care on three

separate occasions, and that Tina had still not shown that she was in a position to make decisions for the benefit of her children.

Essentially, Tina is asking this court to reweigh the evidence in her favor and to reach a result contrary to that of the circuit court. However, a circuit court does not commit reversible error by weighing the evidence differently than how appellant asks the evidence to be weighed. *See Reyes-Ramos v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 46, 571 S.W.3d 32. As a result, we are not left with a distinct and firm impression that the circuit court made a mistake concerning the Department's "reasonable efforts" or any doubt whether DHS proved the statutory ground of "aggravated circumstances."

## B. Admissibility of Evidence

Tina next argues that the circuit court erred in admitting the CASA report into evidence over her hearsay objection. She notes that the CASA report contained, among other things, statements from the children's foster parents and therapists. She also complains that the CASA report was biased against her as it contained primarily negative information about her to the exclusion of the positive—such as her twenty-two-month period of sobriety.

We review a circuit court's ruling on admissibility of evidence under a manifest-abuse-of-discretion standard. *Joslin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 273, 577 S.W.3d 26. Even if there is judicial error in an evidentiary ruling, we will not reverse unless the appellant demonstrates prejudice. *Id.*

Concerning hearsay, the circuit court allowed the CASA report to be introduced into evidence, subject to cross-examination of the CASA volunteer and counsel's specific hearsay

objections. Upon counsel's specific objection, the court indicated that it would excise the prohibited information from the report. In fact, when the CASA volunteer testified, counsel requested that certain language in the CASA report be struck, and the court did so. Tina fails to specifically identify what hearsay information remained after the court's excision. Instead, she merely claims that the entire report should have been struck due to the inclusion of hearsay and points to actions taken by the CASA volunteer that she claims show that the CASA volunteer was biased against her.

Concerning bias, we are unclear how her claims of bias relate to her claim of improper hearsay. Moreover, our de novo review of the testimony from the CASA volunteer does not support her claim of bias. The CASA volunteer, David Hogburg, had been involved with Tina and her family since February of 2017 when NMS was born and NMS and NMFS were taken into custody the first time. He stated that Tina was more involved in services and more receptive to help during the first case, which resulted in a successful reunification. He reported her participation in the current case was different and described it as both resistant and adversarial. He was also a fact witness for the Department concerning the trial placement and the reason for its cessation. While Tina may disagree with this testimony, she has failed to show any bias or prejudice by the introduction of the allegedly improper hearsay evidence.

## C. Best Interest

Tina next challenges the trial court's best-interest finding. In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the

9

juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

We first note that Tina does not challenge the circuit court's findings regarding either adoptability or potential harm. Thus, we need not consider those issues. *Yarbrough v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 429, 501 S.W.3d 839. Instead, she generically asserts that it was not in the children's best interest to terminate because she had made clear progress toward reunification with her children despite the actions of the Department and the CASA volunteer working against her to undermine her ability to regain custody of her children. She notes that while the case had labored on for almost two years, by the final hearing, she had stable housing and employment and had remained clean and sober throughout the entirety of the case. What Tina fails to mention is the evidence of her instability and poor decision making that the court found credible. Moreover, we have held that even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694.

Here, the circuit court was obviously concerned with Tina's ability to make parenting decisions and the impact that her parenting decisions had on her children. For instance, the court heard extensive testimony concerning the relationship between Tina and Darin. Winona Barger, Tina's mother, described their relationship as "toxic."

Darin was charged with causing physical injury to NMS. Despite this, Tina remained in a relationship with him. She did so even though Darin continued to engage in violent behavior. In April 2021, Darin was intoxicated; caused significant property damage; almost caused an automobile accident involving Tina and her youngest child, BS; and was arrested for terroristic threatening. Even after this incident, Tina continued to communicate with Darin during incarceration and assisted in his obtaining bail. While she testified that she was no longer in a relationship with Darin, the court did not find her credible. The court specifically found, "The mother continues to reside with Darin Sharpe, who continues to abuse drugs or alcohol and engage in violent and criminal behavior. Those issues are a danger to the health and safety of the juveniles and cannot be remedied withing a reasonable amount of time."

Another instance of the court's concern about her parental choices involves Quintin Hays. While Tina contends that her housing was "stable," the court did not share her opinion. She lived with her sister Patricia in a home that Patricia owned with Quintin Hays, who had been charged with a violent felony. Despite the Department's warning that the children could not return to the home while Quintin was living there, Tina did nothing with this warning until the week before the termination hearing.

Finally, while Tina notes that the case had been ongoing for two years and she was allegedly close to reunification, she fails to acknowledge that the length of time the children had been languishing in foster care is another fact militating against her. The court made such acknowledgment. It specifically found:

15. The court finds that it has been involved with the mother, Tina Shultz, for four years. The mother, Tina Schultz, blames DHS and CASA for losing her children. However, the children were returned to her in a previous foster care case and came back into the care of the Arkansas Department of Human Services within a year a half [sic], again due to substance abuse and other factors. It was the mother's own family that approached the state for help when Darin Sharpe and Tina Schultz again chose drugs over their children. This was after eight other children had been taken out of the care and custody of Tina Schultz. The oldest of the children in this action is only five years old. The youngest is three years old. The children have spent over one thousand days in the custody of the Department of Human Services. That is most of their lives. The Court finds that is not fair to the kids nor is it in their best interest.

We have held that a parent's past behavior is often a good indicator of future behavior. *Cobb*, 2017 Ark. App. 85, 512 S.W.3d 694. The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). The circuit court's best-interest finding in this case reflects the primary purpose of the Juvenile Code, which is to provide permanency and stability in a child's life when the child cannot be returned to the family home within a reasonable amount of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Elizabeth J. Finocchi*, for appellant.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.