Frankie COBBS *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 04-31 189 S.W.3d 487

Court of Appeals of Arkansas
Division II
Opinion delivered June 30, 2004

*Linda C. Ward*, for appellant.

*Gray Allen Turner*, for appellee.

SAM BIRD, Judge. Appellant Frankie Cobbs brings this appeal from an order terminating her parental rights to her children, D.C. and Q.C. On February 7, 2002, Arkansas Department of Human Services (ADHS) filed a petition alleging that the children of appellant were dependent/neglected in that they were at a substantial risk of serious harm as the result of appellant's physical abuse of the youngest child, D.C. In addition, the petition alleged that appellant refused to work on a case plan designed to prevent the need for removal of the juveniles and refused to cooperate with the caseworker. The children were adjudicated dependent/neglected, and the court found that the allegations contained in the petition were true and correct and that the juveniles were in need of the services of ADHS. The court also noted that ADHS had opened a protective-services case on the family as a result of the substantiated report of physical abuse of D.C. At that time, the court noted in its adjudication order that ADHS had attempted to offer services to appellant, including parenting classes and home visits, but that appellant had failed to cooperate with ADHS. The court ordered appellant to complete parenting classes, submit to a psychological evaluation, and complete any recommended treatment.

After an April 18th review hearing, the court entered a review order stating that the juveniles continued to be in need of ADHS services and that ADHS had made reasonable efforts to provide services to achieve the case-plan goal. In the order, the court stated, "The mother has made no contact with the Department and the Department is relieved of providing services to the mother until she appears and requests services. The Department shall provide the mother with visitation if she appears and requests it." After another review hearing took place, the court entered a review order finding that the children were still in need of ADHS services and should remain in ADHS custody. The court stated that the case plan for D.C. be permanent alternate custody and the case plan for the oldest child, Q.C., be independence. The court then ordered the mother to obtain and maintain stable, appropriate housing; obtain and maintain income sufficient to support the

juveniles; complete parenting-without-violence classes; and attend family therapy as requested. The mother was held responsible for the cost of the parenting-without-violence classes.

A permanency planning hearing was entered in February 2003. The court found again that the children were in need of ADHS services and that custody had to remain in ADHS. The mother was again ordered to obtain and maintain stable, appropriate housing; obtain and maintain income sufficient to support the herein juveniles; complete parenting-without-violence classes; and attend family therapy as requested. The mother was held responsible for the cost of the parenting-without-violence classes. The goal remained reunification. Another review hearing was held on May 15, 2003[1], at which time the court found that it was in the best interests of the juveniles that the case plan be modified to termination of parental rights and adoption. The court further found that the mother had not made any significant progress on the case plan in that ADHS had had no contact with the mother since February, that appellant had lost her employment and housing, and that appellant had not completed parenting classes or anger-management classes. On June 17, 2003, ADHS filed a petition to terminate parental rights, contending that the juveniles had been adjudicated dependent/neglected and currently resided in the care and custody of ADHS pursuant to court order. Further, the juveniles had resided outside the parental home since March 4, 2002, and despite a meaningful effort on the part of ADHS to rehabilitate the home and correct the conditions that caused the removal, the conditions had not been remedied by appellant.

A hearing was held on the petition to terminate parental rights. Appellant testified that she currently resided at the Sebastian County Adult Detention Center because she was arrested for second-degree battery of her boyfriend. She testified that before being arrested, she had lived for three months in an apartment that was rented in her boyfriend's name. She stated previous addresses, including various shelters where she had lived, but she had not lived in any one of them for more than a few months. She admitted to being charged with interfering with child custody, a charge of which she was acquitted. She testified that she had a job from October 2, 2002, through February 13, 2003, when she quit after

---

[1] Although the hearing was held on May 15, 2003, the order from that hearing was not filed until June 18, 2003, a day after the petition for termination of parental rights was filed by ADHS.

getting into an argument with her supervisor. She stated that since she quit, she had been supporting herself with food stamps and had no other option but to move to Oklahoma to live with a relative. She admitted that during the time that she was living in Oklahoma, ADHS did not have her address. She also admitted that when she returned to Arkansas, she did not provide ADHS with an address or have contact with ADHS.

She stated that her mother had been raising her children and that her mother died New Year's Day in 2001, when the children began living with appellant. She noted that she was ordered to pay child support to her mother, but had not done so. She stated that ADHS took custody of the children after there was a true finding of physical abuse of the younger child. She stated that the court had ordered her to attend anger-management classes and parenting classes, and to obtain a stable job and stable housing. But she admitted that she had not done so. She also stated that she was not able to meet the needs of her children because she was "locked up." However, she stated that when she is released, she would get a job and a stable place to live. She stated that she had not been able to accomplish the court's orders because she had been going through a lot with her mother's death. But she stated that she was "past that," had joined a church, and was ready. She admitted that she had not had contact with ADHS for long periods of time.

She also admitted that her mother had raised the children and had custody of them before she died, and that she (appellant) had only had custody of the children for four months of their lives. She noted that D.C. was eleven years old and that Q.C. was fifteen years old. During the time that her mother had custody of her children, she visited them twice a month, on birthdays, Christmas, and graduations.

She admitted that she had not completed either the anger-management classes or the parenting classes that were ordered. She stated that the caseworker for her case had not given her a referral or told her where to obtain a psychological exam. She asked the judge not to terminate her parental rights because she stated that when she got out of jail, she would get a full-time job and housing. She stated that it was in her children's best interests for the judge to give her more time to work on her case plan.

Stacy Glass, the caseworker assigned to appellant's case, testified that in order for appellant to achieve reunification, appellant was ordered to attend parenting classes and anger-

management classes, maintain stable housing and employment, obtain a psychological evaluation, and attend family therapy with her children. Glass admitted to not referring appellant for her psychological evaluation because she could not get in contact with her. Glass stated that she did refer appellant to parenting classes and that appellant did not complete those classes. Further, Glass testified that appellant had not maintained stable employment during the course of her case. The only place that Glass knew that appellant had worked since her case was opened was at Atlantis Plastics, and it was only for five months. In addition, Glass testified that appellant had not maintained stable housing.

Glass stated that from March to June 2002, she had no contact with appellant. During that same period appellant did not have contact with her children. When appellant did call in June 2002, she left two numbers, which Glass used in an effort to contact her. Appellant could not be reached at either number. From August 2002 through December 2002, appellant did request visitation with her children. In February 2003, Glass lost contact with appellant and did not see her until the day of the hearing. Glass stated that she had learned that appellant was back in town by reading in the paper that she was in jail. Glass stated that it was her opinion that appellant did not have a relationship with her children. Glass testified that ADHS had offered the following services to appellant: parenting and anger-management classes, visitation with her children upon therapeutic recommendations, and family therapy. She stated that she/ADHS planned on referring appellant for a psychological exam if appellant had maintained contact with her.

Glass stated that reunification did not occur because of appellant's lack of stability and lack of commitment to her children. She recommended terminating her parental rights. She stated that although both children were in therapeutic foster care, she did not feel that the issues the children had to work through were severe enough to make the children unadoptable.

On cross-examination, Glass stated that appellant had completed three of the anger-management classes. She also stated that appellant might have made some visitation appointments with her children but did not visit often because the children's therapist did not recommend visits by their mother. Glass stated that on a few occasions, she would go to appellant's home to take her to visitation, but often she was either not home or too tired to go. Glass stated that appellant had not provided her children with

birthday cards, Christmas gifts, birthday gifts, child support, clothing, food, or anything else during the past year. However, appellant testified that she was not allowed to send the children anything. Appellant also stated that she was unaware that she was supposed to be paying child support and stated that during the last hearing, the court had ordered her not to do so.

At the end of the hearing, the court found that ADHS had shown by clear, cogent, and convincing evidence that it was in the children's best interests that parental rights be terminated. The court found that the children were adoptable and stated that the goal of the case plan should be adoption. It further found that because the children had lived with their grandmother since they were born, appellant had abandoned her rights to the children from the time they were born. In addition, it found that appellant had failed to comply with the case plan in that she had not maintained stable housing or a stable income, she had not completed anger-management classes or parenting classes, she had not participated in family therapy, and she had not visited on a regular basis. The court found that ADHS had provided therapeutic foster care and medical care for the children, had made referrals for appellant for anger-management and parenting classes, had provided visitation arrangements, and had made a referral for family therapy. It found that even though ADHS had provided these services, the mother had not complied. From that order terminating parental rights, appellant brings this appeal.

Our standard of review in termination-of-parental-rights cases is well-settled. In *Johnson v. Arkansas Dep't of Human Servs.*, 78 Ark. App. 112, 119, 82 S.W.3d 183, 187 (2002) the court wrote:

> When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. The facts warranting termination of parental rights must be proven by clear and convincing evidence, and in reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. Clear and convincing evidence is that degree of proof which will produce in the fact finder a firm conviction regarding the allegation sought

to be established. In resolving the clearly erroneous questions, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations.

An order forever terminating parental rights must be based upon clear and convincing evidence that.the termination is in the best interests of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by continuing contact with the parent. In addition to determining the best interests of the child, the court must find clear and convincing evidence that the circumstances exist that, according to the statute, justify terminating parental rights. One such set of circumstances that may support the termination of parental rights is that the child has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months, and despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent. It is not necessary that the twelve-month period out of home be consecutive. (Citations omitted.)

Arkansas Code Annotated section 9-27-341 (Supp. 2003) states:

(b)(1)(A) The circuit court may consider a petition to terminate parental rights if the court finds that there is an appropriate permanency placement plan for the juvenile.

. . . .

(3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent, parents, or putative parent or parents, and

(B) Of one (1) or more of the following grounds:

(i)(*a*) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. .

Appellant argues that based upon the testimony presented at the hearing on the termination of parental rights, she made an effort to complete many of the elements of her case plan. She asserts that for five months, she maintained stable housing and had a stable income. She completed all but two of the parenting classes and half of the anger-management classes. She maintains that she was not allowed to visit her children, but nonetheless inquired about visits and even visited D.C. on one occasion. She maintains that the testimony shows that she made a concerted and successful effort to comply with her case plan during a five-month period even though she was not allowed to visit her children regularly and was suffering from depression following her mother's death.

We do not find that argument convincing. At the time of the hearing, appellant, who was incarcerated, did not have stable housing or a stable job. She had not completed parenting or anger-management classes as ordered. The children had been out of her home since Feb. 7, 2002, and in ADHS custody for more than one year, giving her plenty of time to meet the requirements of the case plan.

For her second point on appeal, she contends that the court erred in finding that ADHS presented clear and convincing evidence that it made reasonable efforts to provide services to reunify the family because ADHS did not refer her for a psychological evaluation. She contends that it is unknown whether she suffers from severe emotional problems or a diagnosable mental illness because her caseworker did not refer her for a psychological evaluation. She states that it is clear from the testimony that ADHS did not make reasonable efforts to determine whether she suffered from a disability that would require special accommodations.

This argument is also not convincing. At one point early on in the case, April 18, 2002, the court found that ADHS was relieved of providing services to appellant until she appeared

and requested services. ADHS continued to try to offer services. She complains that a psychological evaluation was not ordered and that was in error. However, the record is replete with testimony from Glass that had she been able to maintain contact with appellant, Glass was more than willing to make a referral. However, appellant failed to maintain contact with ADHS and ADHS was at a loss as to where to find her. She cannot now complain of the lack of referral when she failed to stay in contact with ADHS so that it could provide services.

For her third point on appeal, she contends that the court erred in granting ADHS's petition to terminate parental rights because the evidence presented was not sufficient to support a finding by clear and convincing evidence that an appropriate permanency plan existed that the children are likely to be adopted. She states that because the children had many emotional problems and were eleven and fifteen years old at the time of the final hearing, they were not likely to be adopted. She points to several letters from certain counseling services that state that Q.C. had mood swings, depression, anxiety, verbal aggression, difficulty with male relationships, and disrespect to authority in a school setting. In addition, she states that a report from Rivendell Behavioral Health Services found D.C. to be bi-polar and to have oppositional defiant behavior. She argues that these documents support her argument that her children could not be adopted. However, these documents are not abstracted. To the contrary, the record contains Glass's testimony that, although the children had issues to work through, not only did she believe that they could be adopted, but she believed that there was a possibility that they could be adopted together.

Although we conclude that the trial court's order terminating Cobbs's parental rights should be affirmed, we decline to do so "summarily" as ADHS urges us to do. In its responsive brief, ADHS argues that this court should summarily affirm because Cobbs failed to abstract the testimony from any hearings other than the termination hearing. ADHS argues that an abstract of all proceedings in parental-termination cases, including those in the underlying dependency-neglect action, should be made a part of the record on appeal because the evidence adduced at those proceedings could be considered by the trial court at the termination hearing, citing *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). ADHS also points to Ark. Code

Ann. § 9-27-341(b)(3)(B)(ix)(d)(2) as authority for the proposition that the appellant was required to include the entire record of all proceedings in the dependency-neglect action that led to the parental-termination case in her record on appeal.

 We do not agree with ADHS's interpretation of either *Wade, supra,* or of § 9-27-341(b)(3)(B)(ix)(d)(2). In *Wade,* an appellant contended that, in her appeal of the termination of her parental rights to her three children, the supreme court should not consider ADHS's supplemental record that contained documents and statements presented to the trial court in hearings relating to the earlier dependency-neglect case involving her children. The supreme court disagreed, noting that it had already decided, in granting ADHS's motion to supplement the record, that the information in the supplemental record was "relevant to the instant appeal in that the proceedings and orders pertaining to the termination of parental rights were in fact a continuation of the original dependency-neglect case." *Wade,* 337 Ark. at 361, 990 S.W.2d at 514. We interpret this language in *Wade* to mean that either party to an appeal from a parental-termination order *may* include in the record on appeal the record of the underlying dependency-neglect case. Nothing in *Wade* suggests that the appellant in an appeal from a parental-termination order is *required* to include, in the designated appeal record, all or any part of the record of the underlying dependency-neglect proceeding.

 Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(d)(2) requires that, in cases where the parent was represented by counsel, "the trial court shall take judicial notice and incorporate by reference into the record all pleadings and testimony in the case incurred before the termination of parental rights hearing." This statute clearly requires that the pleadings and testimony from hearings prior to the termination hearing are to be incorporated by reference into the *trial* record. There is no language in the statute that can be interpreted to mean that those proceedings must also be designated as a part of the appeal record. Such an interpretation of the statute would be inconsistent with Rules 3(e) and 6(b) of the Arkansas Rules of Appellate Procedure — Civil. Under Rule 3(e), an appellant may designate in his or her notice of appeal only "specific portions" of oral testimony or proceedings as a part of the record on appeal. Rule 6(b) provides that an appellant "shall order from the reporter a transcript of such parts of the proceedings as he has designated in the notice of appeal

. . . ." Rule 6(b) clearly permits the appellant in civil cases to determine, at his own risk, what parts of the record in the trial court he considers necessary for the prosecution of his appeal, subject to the right of the appellee to designate additional parts of the record to be included in the appeal record, "if he deems a transcript of other parts of the proceedings to be necessary."

ADHS also argues that Rule 4-2(a)(5) of the Rules of the Supreme Court requires an appellant to bring up such material parts of the trial court record as are necessary to an understanding of all the questions presented on appeal. It appears that ADHS misreads the rule. Rule 4-2(a)(5) merely provides, in part, that an appellant should *abstract* "only such material parts of the testimony of the witnesses and colloquies between the court and counsel and other parties as are necessary to an understanding of all questions presented to the court for decision." Rule 4(a)(5) does not purport to deal in any way with the question of what portions of the trial court record an appellant is required to designate as his appeal record.

Finally, ADHS argues that, although Ark. R. App. P. 6(b) permits it to supplement the appeal record designated by appellant, there was no record in this case for it to supplement. We disagree. In her notice of appeal, appellant designated "the record, proceedings, and evidence from the September 19, 2003 termination hearing to be contained in the record on appeal." From the abstract, it is obvious that the record designated included the testimony and other proceedings at the termination hearing. Under Rule 6(b), ADHS was free, within the time specified, to designate such additional parts of the record as it considered necessary, including the record of previous testimony and proceedings in the dependency-neglect case.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.