LARRY D. VAUGHT, Judge, dissenting. |1SI would reverse this case. While it is a close case, I am left with a firm conviction that this termination is not supported by clear and convincing evidence because the statutory grounds for termination set forth in Arkansas Code Annotated section 9 — 27—341(b)(3)(B) (Supp.2013) have not been met. Without such grounds, the termination is a violation of Crystal Schaible’s fundamental right to parent. Our standard of review in termination-of-parental-rights cases is well settled. When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. Cobbs v. Ark. Dep’t of Human Servs., 87 Ark.App. 188, 189 S.W.3d 487 (2004) (quoting Johnson v. Ark. Dep’t of Human Servs., 78 Ark.App. 112, 119, 82 S.W.3d 183, 187 (2002)). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Chase v. Ark. Dep’t of Human Servs., 86 Ark.App. 237, 184 S.W.3d 453 (2004) (quoting Bearden v. Ark. Dep’t of Human Servs., 344 Ark. 317, 328, 42 S.W.3d 397, 403-04 (2001)). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. Chase, 86 Ark.App. at 240, 184 S.W.3d at 454. An order forever terminating parental rights must be based upon clear and convincing evidence that the termination is in the best interest of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by continuing contact with the parent. Ark.Code Ann. § 9-27-341(b)(3)(A) (Supp.2013). In addition to determining the best interests of the child, the court must find clear and convincing evidence | uthat circumstances exist that, according to the statute, justify terminating parental rights. Ark.Code Ann. § 9-27-341(b)(3)(B). We do not terminate a person’s parental rights because she is poor, has used drugs, or does not always keep a tidy house. While these examples may be factors in determining a parent’s fitness, a determination of unfitness must be made before the State may proceed with a termination case. Our supreme court has recognized that a parent’s right to the care and control of his or her child is a fundamental liberty and that termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. Jones v. Ark. Dep’t of Human Servs., 361 Ark. 164, 205 S.W.3d 778 (2005) (citing Camarillo-Cox v. Ark. Dep’t of Human Servs., 360 Ark. 340, 201 S.W.3d 391 (2005); Trout v. Ark. Dep’t of Human Servs., 359 Ark. 283, 197 S.W.3d 486 (2004); Linder v. Linder, 348 Ark. 322, 72 S.W.3d 841 (2002); Ark. Dep’t of Human Servs. v. Huff, 347 Ark. 553, 65 S.W.3d 880 (2002)). The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In Thompson v. Arkansas Social Services, 282 Ark. 369, 375-76, 669 S.W.2d 878, 881 (1984) (quoting Davis v. Smith, 266 Ark. 112, 583 S.W.2d 37 (1979)), the supreme court stated, The concern of this court for the preservation of these [parental] rights has been expressed over a long period of time.... [W]e recognized the rights of parents of good moral character, however poor and humble they might be, if able to support their child in their own style of life, not, as a cardinal principle of law and nature, to be deprived of parental privileges, except when urgently necessary to afford the child reasonable protection. Parental rights and the integrity of the |1fifamily unit have always been a concern of this state and their protection regarded as a proper function of the court. They have been classified as essential rights, basic civil rights, and personal rights more precious than property rights. They have been said to be fundamental rights.... Certainly there remains no lingering doubt about the fact that the rights of parents to the care, custody and upbringing of their children are the subject of constitutional protection on both due process and equal protection standards. (Emphasis added.) In light of this onerous burden, I would reverse this case. In an order entered January 7, 2014, the court terminated Schaible’s parental rights to ZD after finding that (1) she voluntarily terminated her rights to two previous children based on a drug-abuse issue; (2) she gave birth to ZD with prenatal exposure to marijuana; (3) she continued to fight drug addiction; (4) she failed to comply with a drug-addiction program or get her GED; and (5) there was a repeated pattern of behavior that clearly and convincingly showed that she had not resolved her drug issues. However, throughout the case Schaible was found to be in compliance with the case plan and court orders. In fact, the caseworker testified that she had “fulfilled most, if not all, of the things in the case plan.” She did so well that she went from being “fast tracked” for termination (no services provided or early termination — less than twelve months — of services), to having unsupervised visitation and a trial home placement. She held a job, had a home, a vehicle, and a driver’s license. She participated in GED classes and passed all of her drug screenings. The trial home placement ended after an incident on a float trip (which did not involve ZD), where Schaible was arrested for public intoxication. However, she continued to have unsupervised visitation, and in fact had ZD the weekend prior to the termination. The last court report stated that “the visits go well and no major concerns have been presented after 11Rthe visits are done.” The foster mother testified that when ZD was returned from visits, his feet were dirty and there was a smell of smoke on his clothing. The trial court found her to be credible and even referred to her as the “adoptive mother.” There was testimony that she planned to name the child “Hunter” upon adoption. Schai-ble denied smoking around the child and acknowledged that ZD suffered from asthma. At the conclusion of the hearing, the attorney ad litem summed the case up as best as anyone could: ZD was on trial placement with [Schai-ble] for about six weeks, not that long ago. If she was fit enough at that time, other than the episode with the float trip, what has happened since then to make her unfit? What I’m hearing is the question about the therapies, the smoking, and quote-unquote, bad choices.... When it comes down to it, Your Honor, what I have to think about is clear and convincing evidence. Is there clear and convincing evidence? I’m not so sure about that. Here, Schaible had seventeen months of supervision but did not fail a drug screen. She was granted in-home placement and unsupervised weekend visitation. It is illogical that she can be fit enough to have her child the weekend before the termination, but then the next week there be a finding that the child would be in danger if returned to her. By all accounts she complied with the case plan and continued to make meaningful progress toward reunification. As such, I would reverse this case. The stakes are too high when a fundamental right is implicated. The court was holding the past against Schaible. And, while I do not disagree that the foster-parent situation was an arguably better environment for the child, that is irrelevant to our inquiry. The State has no interest in terminating the rights of an otherwise fit parent who presents no observable threat to the child’s well-being. I would reverse and remand. HIXON, J„ joins.