Cite as 2022 Ark. App. 411

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-22-133

| | |
|---|---|
| RONNA DAY<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD<br><br>APPELLEES | Opinion Delivered October 19, 2022<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT,<br>FORT SMITH DISTRICT<br>[NO. 66FJV-20-303]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED; MOTION GRANTED |

## KENNETH S. HIXSON, Judge

Appellant Ronna Day appeals from the termination of her parental rights to her daughter, Minor Child, who was born on May 20, 2018.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Ronna's counsel has filed a no-merit brief and motion to withdraw, asserting that there are no issues of arguable merit to support an appeal and that she should be relieved as counsel. The clerk of this court notified Ronna of her counsel's motion and her right to file pro se points, and Ronna has filed pro se points. We affirm and grant counsel's motion to be relieved.

---

[1]Minor Child's father had no participation in the case, and his parental rights were also terminated. The father has not appealed.

In order to terminate parental rights, the trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2021). The order terminating parental rights must also be based on a showing by clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Best v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 485, 611 S.W.3d 690.

On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the trial court's ruling unless its findings are clearly erroneous. *Mason v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 124, 642 S.W.3d 260. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, the appellate court gives due deference to the opportunity of the trial court to judge the credibility of witnesses. *Id.*

When Minor Child was born on May 20, 2018, she tested positive for methamphetamine. As a result, Arkansas Department of Human Services (DHS) opened a protective-services case. DHS provided a drug assessment, drug screening, and home visits.

2

However, DHS closed that protective-services case a few months later because DHS was unable to locate Ronna or Minor Child.

The present case was initiated on September 3, 2020, when DHS filed a petition for dependency-neglect and emergency custody of Minor Child. DHS filed the petition after a Garrett's Law report was made to the child-abuse hotline that Ronna had tested positive for methamphetamine and marijuana after delivering a stillborn child. An attached affidavit of a family-service worker stated that Minor Child has seven older siblings and that none of these children were in Ronna's custody. Two of Ronna's other children were in the custody of their father; one child was privately adopted at birth; one child was in the custody of a woman in Oklahoma; Ronna voluntarily consented to the termination of her parental rights as to one child; and Ronna had her parental rights involuntarily terminated as to two children. All of the three children to whom Ronna's parental rights were terminated had tested positive for illegal drugs at birth, and in those termination orders it was noted that Ronna was an unrehabilitated drug user with no stability. In the involuntary-termination case, Ronna had been convicted of felony drug charges, and she was found to have abandoned her children.

The affidavit stated that on August 31, 2020, DHS located Minor Child at Ronna's mother's house. Ronna arrived there forty-five minutes later. Ronna's mother told the family-service worker that Ronna did not live with her, but Ronna stated that she did live with her mother. Ronna stated that a woman named Anna Linder cared for Minor Child ninety percent of the time. Ronna also told the family-service worker that she began using

3

methamphetamine at age fifteen and that she had used methamphetamine several days before delivering the stillborn child.

The trial court entered an ex parte order of emergency custody on September 3, 2020. A probable-cause order followed on October 5, 2020.

On October 14, 2020, the trial court entered an adjudication order finding Minor Child dependent-neglected due to parental unfitness and Ronna's extensive, long-term drug abuse. The trial court found by clear and convincing evidence that Ronna had subjected Minor Child to aggravated circumstances and also found that Ronna previously had her parental rights involuntarily terminated as to siblings of Minor Child. The trial court found that in the prior involuntary-termination case, Ronna "participated in no services and was released from incarceration . . . and did not contact the Department in the nearly nine months between her release and the TPR hearing." The trial court further found:

> She did not appear at the hearing and had not visited the child. In both of the previous cases in which the mother's rights were terminated (one voluntarily and one involuntarily) the Department was found to have provided reasonable efforts. The issues have been very consistent in all the cases. The children were born with illegal substances in their system (Garrett's Law). Both [Minor Child] and the child who passed away and prompted involvement in this case tested positive at birth for illegal substances. The Court makes a finding that there is little likelihood that services will result in a successful reunification within a timeframe reasonable as viewed from the juvenile's perspective.

The trial court set concurrent case goals of reunification and adoption following termination of parental rights. Ronna was ordered to obtain and maintain stable and appropriate housing, income, and transportation; complete parenting classes; submit to a psychological

4

evaluation and follow the recommendations; visit Minor Child regularly; submit to random drug screens; and resolve her legal issues.

On December 2, 2020, Anna Linder filed a motion to intervene in the dependency-neglect case. In her motion, Anna asserted that she had stood in loco parentis to Minor Child since Minor Child was two months old. Anna stated that it would be in Minor Child's best interest to be placed with someone who has had a long-term and consistent relationship with the child, and she asked to be considered for Minor Child's temporary and permanent placement. On March 30, 2021, the trial court granted Anna's motion to intervene, and Anna was subsequently granted visitation with Minor Child.

On April 1, 2021, the trial court entered a review order. The trial court found that DHS had made reasonable efforts to provide family services. The trial court noted that Ronna was incarcerated and ordered her to "comply with the previous court orders as she can while she is incarcerated." The trial court stated that the goal of the case was concurrent goals of reunification, guardianship, and adoption following termination of parental rights.

Another review order was entered on June 24, 2021. DHS was again found to have made reasonable efforts. The trial court noted that Ronna had been released from incarceration on May 20, 2021, and did not have stable and independent housing but had obtained a temporary job. The trial court stated that Ronna was enrolled in a drug-court program as a condition of her release from incarceration on drug charges and that as long as she was in compliance with the drug-court program, she would not be required to complete

a separate drug-and-alcohol assessment. The trial court stated that the case goal was the concurrent goal of reunification and adoption following termination of parental rights.

On July 14, 2021, DHS filed a petition to terminate Ronna's parental rights. As statutory grounds, DHS alleged that Ronna had subjected Minor Child to aggravated circumstances and that Ronna previously had her parental rights involuntarily terminated as to a sibling of the child, which were findings that the trial court had previously made in the unappealed adjudication order. DHS also alleged that termination of Ronna's parental rights was in Minor Child's best interest.

On September 10, 2021, the trial court entered a permanency-planning order. The trial court found that Ronna had not made significant and measurable progress. The trial court found that Ronna had housing but that the lease was not in her name; that she had obtained employment at Simmons just four days prior; and that she did not have a driver's license or proof of transportation. The trial court changed the goal of the case to adoption following termination of parental rights.

The termination hearing was held on November 4, 2021, and Ronna was the first witness to testify. Ronna stated that she lives alone in a one-bedroom apartment. She stated that she obtained employment at Tyson's three weeks before the termination hearing but was on work restrictions because she was six months pregnant with another child. Ronna stated that she had no transportation but that she got rides from her mother. She stated that she completed parenting classes and a psychological evaluation and was attending counseling. Ronna indicated that she regularly visited Minor Child and stated that the visits

6

"go great." Ronna admitted that Minor Child had been under the care of Anna Linder from the time Minor Child was three months old until her removal by DHS, but Ronna stated that she visited Minor Child during that time and that she was bonded with Minor Child. Ronna acknowledged that when DHS took custody of Minor Child, DHS removed Minor Child from her legal custody but not her physical custody.

Ronna testified that she has a criminal history of drug-related offenses and that she was still on a suspended imposition of sentence due to a prior conviction.[2]  Ronna stated that she was enrolled in drug court pursuant to court orders from when she "caught a charge" in 2019. Ronna stated that the requirements of drug court included visiting her counselor and drug-court officer, attending classes at drug court and attending NA meetings, and submitting to random drug screens. Ronna stated that, other than a couple of minor sanctions, she was in compliance with drug court. Ronna stated that her recent drug screens were all negative and that in twelve days she will have been "clean and sober" for a year. Ronna acknowledged that she had been incarcerated for six months during that time frame. Ronna stated that she was in phase two of the five-phase drug-court program.

Ronna testified that she had used illegal drugs for fifteen years and that, until being clean for the past year, she had used illegal drugs daily for the previous five years. Ronna

---

[2]Two sentencing orders from 2016 and 2017 were admitted into evidence showing that Ronna had twice pleaded guilty to possession of drug paraphernalia. For the 2016 conviction, Ronna received a five-year suspended imposition of sentence, and for the 2017 conviction, Ronna was sentenced to two years in prison followed by an eight-year suspended imposition of sentence.

thought that it was in Minor Child's best interest to be returned to her custody, stating that this case was different from the prior termination cases involving her older children because "I'm sober, and I'm clean, and I've turned my whole life around." Ronna stated that, in the event she was to return to jail on a revocation of her suspended imposition of sentence, she planned to give custody of Minor Child to Anna Linder.

Brian Tejada works for the Arkansas Department of Correction in probation and parole and is Ronna's drug-court supervisor. Mr. Tejada stated that Ronna pled into drug court on November 10, 2020, and that she tested positive for methamphetamine eight days later. However, Ronna has not tested positive since then. Mr. Tejada stated that there were some "rough patches" at first and that Ronna had been sanctioned for fraternizing with a felon, missing an office visit, and lying about her employment. Mr. Tejada indicated that Ronna was currently in compliance with the drug-court requirements, and that in light of her compliance he thought she likely would complete the program, which would take a minimum of another year.

Robbie McKay is the DHS supervisor assigned to the case. Ms. McKay discussed Ronna's history of drug use and the previous DHS cases involving Ronna's older children. Ms. McKay stated that DHS had offered similar services in those cases, which resulted in one voluntary and two involuntary terminations. Ms. McKay testified that, although Ronna was presently clean and sober, she had a lot of support and structure with the drug-court program. Ms. McKay was concerned about Ronna's ability to maintain her sobriety without

that support and structure, noting that Ronna is thirty-three years old and admitted using methamphetamine since she was fifteen.

Ms. McKay stated that Ronna visited Minor Child regularly and that they played together and the visits went fine. Ms. McKay stated that when the visits ended, Minor Child did not appear to be upset and was ready to leave.

Ms. McKay described Minor Child as a "precious three-year-old girl who is very smart and loving." Ms. McKay opined that Minor Child is adoptable and stated that there was someone interested in adopting her.

Ms. McKay did not think Minor Child could be safely returned to Ronna's custody. Ms. McKay was concerned about Ronna's lack of stability, stating that Ronna had no driver's license or transportation, had never demonstrated stable employment, and had issues with her housing that included past-due rent and a past-due electric bill. Ms. McKay also stated that Ronna had a misdemeanor warrant pending in Oklahoma. Ms. McKay stated that Ronna lacked the long-term stability of being clean and sober. Ms. McKay thought that if Minor Child were returned to Ronna's custody she would be at risk of physical and psychological harm.

On December 2, 2021, the trial court entered an order terminating Ronna's parental rights. The trial court found by clear and convincing evidence that termination of parental rights was in Minor Child's best interest, and the court specifically considered the likelihood of adoption as well as the potential harm of returning the child to Ronna's custody as required by Ark. Code Ann. § 9-27-341(b)(3)(A). The trial court also found clear and

9

convincing evidence of two statutory grounds, which the trial court had previously found in the adjudication order. Under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*, the trial court found that Ronna had subjected Minor Child to aggravated circumstances, meaning that a determination is made by a judge that there is little likelihood that services to the family will result in successful reunification. The trial court also found that Ronna previously had her parental rights involuntarily terminated as to another child, which is a ground for termination under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(4)(A)*.

In her no-merit brief, Ronna's counsel correctly asserts that there could be no meritorious challenge to the sufficiency of the evidence to support termination of Ronna's parental rights. With respect to the statutory grounds found by the trial court, there can be no challenge to the ground of aggravated circumstances because this finding was made by the trial court in the adjudication order, which was not appealed. In termination cases, a challenge to a finding of aggravated circumstances must be made, if at all, in an appeal from the adjudication order. *Willingham v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 568. Moreover, it is undisputed that Ronna previously had her parental rights involuntarily terminated as to two of Minor Child's older siblings, as found by the trial court in both the adjudication order and the termination order. Because these statutory grounds were conclusively established, there can be no meritorious challenge to the statutory-ground element of the termination statute.

We also agree with the assertion of Ronna's counsel that there can be no meritorious challenge to the trial court's finding that termination of parental rights was in Minor Child's

10

best interest.  The likelihood of adoption was established because DHS caseworker Robbie McKay testified that Minor Child is adoptable and already has a family interested in adopting her.  We have held that a caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding.  *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, 543 S.W.3d 540.  The trial court also found that Minor Child would be at risk of potential harm if returned to Ronna's custody.  In considering potential harm, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm.  *Hutton v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 242, 646 S.W.3d 215.  Potential harm must be viewed in a forward-looking manner and in broad terms, and it is well settled that a parent's past behavior is an indicator of likely potential harm should the child be returned to the parent's care and custody.  *Id.*  The evidence showed that Minor Child was Ronna's eighth child and that Ronna did not have custody of any her children.  Ronna has a long history of methamphetamine abuse, which resulted in many of her children, including Minor Child, testing positive for methamphetamine at birth and which was chiefly responsible for the termination of Ronna's parental rights to three of her older children.  After Ronna gave birth to Minor Child, DHS opened a protective-services case that was later closed when Ronna and Minor Child could not be located.  The case was reinitiated after Ronna delivered a stillborn child while testing positive for methamphetamine, at which time it was discovered that Minor Child was not in Ronna's physical custody but was being cared for by another person.  As a result of Ronna's drug use, she has a history of criminal convictions and was enrolled in drug court as a condition of a recent drug charge.  And although Ronna

11

was progressing in drug court and had not tested positive for methamphetamine recently, this was not a bar to termination in light of the other evidence in the case bearing on the best interest of Minor Child and her need for permanency. In addition to Ronna's lengthy and well-documented drug issues, there was also evidence of a lack of stability in that she lacked transportation or any steady employment history, and there were issues with her housing situation. In light of the evidence presented, the trial court's finding that termination of Ronna's parental rights was in Minor Child's best interest was not clearly erroneous.

Other than the termination itself, there were two other adverse rulings that have been adequately addressed in Ronna's counsel's no-merit brief. The first of these adverse rulings occurred when the trial court admitted into evidence, over Ronna's relevancy objection, a 2016 sentencing order showing that Ronna pleaded guilty to possession of drug paraphernalia. We review evidentiary rulings under a manifest-abuse-of-discretion standard, and we will not reverse absent a demonstration of prejudice. *Joslin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 273, 577 S.W.3d 26. Here, there was no abuse of discretion in admitting the 2016 sentencing order because Ronna's long history of drug abuse was relevant to the issue of whether her parental rights should be terminated. Moreover, a 2017 sentencing order reflecting another drug-paraphernalia conviction was admitted without objection, as was other evidence documenting Ronna's long-term drug use, including her own admission that she had used methamphetamine since the age of fifteen. Therefore, the 2016 conviction was merely cumulative of other competent evidence and resulted in no prejudice.

The remaining adverse ruling occurred during Ronna's testimony on redirect examination. Ronna was asked about what her sister in Missouri had told her about her sister possibly being interested as a placement option for Minor Child.[3] The trial court sustained the attorney ad litem's hearsay objection to the question. The trial court did not abuse its discretion in sustaining the objection because the statement was offered to prove the truth of the matter asserted and was clearly inadmissible hearsay under Ark. R. Evid. 801(c) and 802. Moreover, in light of the evidence presented supporting termination of Ronna's parental rights, this adverse ruling could not have changed the outcome of the proceeding and resulted in no prejudice. Therefore, there can be no meritorious challenge to this adverse ruling.

Finally, we address Ronna's pro se points. In Ronna's pro se points, she challenges the sufficiency of evidence supporting termination of her parental rights and states that she has changed her life and is now a sober, functioning member of society. We note that in Ronna's pro se points, she references events that occurred after the termination order was entered; however, these events were not before the trial court and cannot be considered by our court on appeal. Nevertheless, given our previous discussion and conclusion that there can be no meritorious challenge to the sufficiency of the evidence supporting the termination of Ronna's parental rights, we conclude that her pro se points provide no grounds for reversal.

---

[3]We note that Ronna's sister did not appear at the termination hearing or at any other hearing in the case.

13

After examining the record, appellant's counsel's brief, and appellant's pro se points, we have determined that counsel has complied with our no-merit rules and that this appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights, and we grant her counsel's motion to be relieved from representation.

Affirmed; motion granted.

HARRISON, C.J., and ABRAMSON, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.