Cite as 2026 Ark. App. 14

# ARKANSAS COURT OF APPEALS
## DIVISION I
No. CV-25-249

|  |  |
|---|---|
| | Opinion Delivered: January 14, 2026 |
| LANDRIC WATSON | |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46 JV-24-9] |
| V. | |
| | HONORABLE BRENT HALTOM, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |
| APPELLEES | |

**CASEY R. TUCKER, Judge**

Appellant Landric Watson appeals the Miller County Circuit Court's termination of his parental rights to his minor child (MC).  Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2024), Landric's attorney filed a no-merit brief and a motion to be relieved as counsel. The clerk of our court sent copies of the brief and motion to Landric informing him of his right to file pro se points for reversal pursuant to Rule 6-9(j)(3), and he has not done so. Having examined the record, we are satisfied that there are no issues of arguable merit to support an appeal.  We therefore affirm the termination and grant counsel's motion to be relieved.

I.  *History of the Case*

On January 22, 2024, the Arkansas Department of Human Services ("the Department") became involved with Landric Watson and Racarsha Watson pursuant to a report of "Garrett's Law," or prenatal exposure of illegal substances. During the interview at the hospital, MC's mother, Racarsha, Landric's wife, acknowledged to the family service worker ("FSW") that she had used cocaine and THC on January 19, 2024, two days before MC's birth.[1]

The FSW scheduled a team decision-making meeting for January 24, 2024, to determine the next steps. According to the affidavit attached to the initial petition for dependency-neglect filed on January 24, Racarsha and Landric appeared at the meeting and revealed that they had recently moved from Louisiana to Arkansas, leaving Racarsha's nine children and Landric's six children in Louisiana.[2] Landric acknowledged that he did not communicate with his underage children. The couple also acknowledged that they were living in public housing and had no income. Landric denied drug use except for marijuana.

After the meeting, the Department offered to provide Racarsha with inpatient drug treatment in a setting that would allow MC to accompany her. After the couple discussed the option, Racarsha agreed to treatment. Landric stated that he would leave her if she went to treatment, and he asked the FSW if they could put four of the underage children in

---

[1]The court also terminated Racarsha's parental rights, but she did not appeal the court's order.

[2]Racarsha had another child that was the subject of a Louisiana Department of Human Services case concerning drug use.

Louisiana "up for adoption" to avoid Racarsha's being placed in rehab. After the FSW told him that was not an option, Landric left the meeting and did not return.

The FSW had set up a prescreening phone appointment with Arkansas Cares for January 25, but Racarsha failed to call in for her intake meeting. After her failure to appear, the Department removed MC from the custody of Racarsha and Landric and placed him in Department custody under a seventy-two-hour hold on that same day. On January 29, the Department filed a formal petition for dependency-neglect seeking custody. The court entered an emergency order on the same day and set the case for a probable-cause hearing. Landric was immediately provided court-appointed counsel. On February 7, the court entered an agreed probable-cause order. The court found that MC's removal from the couple's custody was necessary to ensure his safety, health, and welfare and that his continued placement in Department custody was necessary pending an adjudication hearing, which was set for March 13.

After the adjudication hearing, the court entered an order dated March 27 finding MC dependent-neglected due to neglect and parental unfitness. The court set concurrent goals of reunification and placement with a relative. The court ordered the couple to complete services, including a drug-and-alcohol assessment.

During the first review hearing on June 12, the court found that while the Department had offered reunification services, neither parent had complied with any of the services offered, including visiting MC during the three months leading up to the hearing.

The court maintained a goal of reunification and ordered the couple to start and complete the services being offered.

On August 30, the Department filed a motion to terminate reunification services, alleging that MC had been subject to aggravated circumstances and asking the court for a finding that there was little likelihood that services would result in reunification. Specifically, the motion stated that the parents had not had contact with MC since March 6 and had made no progress towards remedying the situation that caused the removal of MC. The Department asked for a finding of abandonment as the basis to be relieved of providing further services.

On September 25, the court held a hearing on the motion, and after the hearing, at which Landric was present and represented by counsel, the court granted the Department's motion, finding that MC had been subjected to aggravated circumstances for the bases alleged in the motion. Specifically, the court found:

> 2. This case was thoroughly reviewed by this Court on this date and pursuant to Ark. Code Ann. § 9-27-365 and FINDING proof by clear and convincing evidence, the Court GRANTS the Motion to terminate reunification because it is in the best interest of the juvenile and upon the following grounds and with these supporting facts:
>
> A. The juvenile was subjected to aggravated circumstances, specifically the juvenile(s) was abandoned, chronically abused, subjected to extreme or repeated cruelty.
>
> B. There is little likelihood that services to the family will result in successful reunification.
>
> C. The juvenile is an abandoned infant in that the juvenile is less than nine (9) months of age and the parent, guardian or custodian left the

4

child alone or in the possession of another person without identifying information or with an expression of intent by words, actions or omissions not to return for the infant.

As a result, the court granted the motion to terminate reunification services and relieved the Department of providing further services. The court allowed the parents to continue with supervised visits as long as they did not miss more than two visits.

On November 6, the court held a permanency-planning hearing, at which Landric was present and represented by counsel. There was testimony that the parents had missed more than two of their supervised visits since the previous hearing. The court entered an order changing the goal to adoption and relieved the Department of providing the parents visitation with MC.

On November 19, the Department filed a petition for termination of parental rights alleging that termination was in the best interest of MC and that grounds existed because, in part, the court had already made a finding that MC had been subjected to aggravated circumstances. In addition, the Department alleged in the petition that MC had continued to be out of the parents' custody for twelve months and that the parents had willfully failed to maintain meaningful contact with MC or provide significant material support.

On January 22, 2025, the court held a hearing on the petition to terminate parental rights and the Department's power to consent to adoption. Landric was present and represented by counsel at the hearing. The FSW recited the history of the case, noting that despite the offer of services, neither parent participated in services. She said that while the couple had exercised supervised visitation with MC in the beginning of the case, the couple

always tested positive for THC, they had twice tested positive for cocaine, and Landric frequently wanted to end the four-hour visitation early. The FSW testified that neither parent had any contact with MC after the order terminating reunification services was entered. She reported that the couple had recently moved back to Louisiana and were living off Landric's SSI. On cross-examination, the FSW acknowledged that the court-appointed special advocate had visited the home in Louisiana and found it suitable for children.

Ruthann Murphy, an adoption specialist with the Department, testified that MC's potential for adoption is high, and there are no factors that would prohibit adoption. She further stated there were 238 potential matches for MC and that his foster parents had expressed an interest in adopting MC if his parents' rights were terminated.

Landric testified in his defense, and he noted that he had lived in the same location in Plain Dealing, Louisiana, for around ten years. Landric testified regarding the Louisiana DHS case involving Racarsha's son, which occurred before MC's birth:

| | |
|---|---|
| ATTORNEY AD LITEM: | Mr. Watson, are you sure that you were not ordered to - - in the case in Louisiana that your wife had, are you sure you were not ordered to do services? |
| LANDRIC: | No, sir. Because like I say, that was her and his child. That wasn't my child. |
| ATTORNEY AD LITEM: | Well, I know it wasn't necessarily your child, but she was living with you; correct? |
| LANDRIC: | Yes, but they did not order me - - they ordered them two - - those two. |

With respect to this case involving MC and the services ordered by the court, Landric testified that he had begun drug treatment and parenting through Active Recovery. Landric stated that as part of the parenting class, he had to watch videos, keep a journal, discuss parenting with other class participants, and provide three negative drug screens, all of which he completed and provided to CASA through Active Recovery. He believed that parenting classes helped him. He noted that he completed Active Recovery on November 14, 2024, and said he informed CASA. He also testified that after the termination-of-reunification-services hearing when the court made visits contingent on clean drug screens and consistent attendance, he missed visitation due to medical appointments.[3] As a result, his visits were terminated. There was an exchange between the court and Landric regarding his missed visitation due to the doctors' appointments. Landric asserted that he did what was asked of him, but he conceded he was not able to get the psychological evaluation completed after appointments he made were canceled because "since it was court ordered they weren't going to be able to offer me services." Landric's parenting certificate was admitted into evidence as well as proof of a negative drug screen completed on October 31, 2024. The court pointed out that the drug-screen exhibit showed Landric was still positive for marijuana almost the entire month of October, except for October 31. Landric acknowledged that it took him a month to test clean due to high drug levels in his body. The court questioned whether

_____

[3]When the FSW was recalled to the witness stand, she clarified to the court that she had not received any medical excuses from Landric. She said Landric texted her and said he was not going to be able to make it, and there was no follow up.

7

Landric missed visitations during August and September due to sickness, considering he was still testing positive for marijuana through most of October. Landric testified that while he and Racarsha remained married, they had physically separated and had no recent contact, even though she was pregnant with his baby.

The ad litem called the FSW back to the witness stand to rebut Landric's testimony. She testified as follows:

ATTORNEY AD LITEM: Ms. Johnson, you heard Mr. Watson's testimony as to not being ordered services prior to [MC] coming here; is that the way you recall it?

FSW: No, sir.

ATTORNEY AD LITEM: And what was told to you as far as the services?

FSW: By Ms. Trinity, who is the caseworker for the case in Louisiana - -

LANDRIC'S COUNSEL: Objection to hearsay.

FSW: - - they were - - they were.

THE COURT: I will allow it to rebut his testimony, but that is as far as it can go.

ATTORNEY AD LITEM: Just - - what is your understanding as to what - - well, is it your understanding he was ordered to do services?

FSW: Yes, sir.

ATTORNEY AD LITEM: And that was based on what the caseworker in Louisiana - -

FSW: Yes, sir.

| | |
|---|---|
| ATTORNEY AD LITEM: | -- represented? And as part of -- and that was part of your job in this case, was communicating back-and-forth with the case worker in Louisiana? |
| FSW: | Yes. |
| ATTORNEY AD LITEM: | And that was because the services could not necessarily be performed here because of the limitations that they lived in -- |
| FSW: | Yes, sir. |
| ATTORNEY AD LITEM: | -- Louisiana? |
| FSW: | Yes, sir. |

Sarah Smolarz, the CASA representative, testified that while Landric had an appropriate home with a sleeping space for MC, she remained concerned about Landric's inconsistent visitation during the case, especially since it persisted even after the court told him he would lose the right to visit if he missed two or more visits. She said Landric had offered various reasons for the missed visits, including being sick, attending a funeral, and having a flat tire. The CASA recommended termination as to both parents, but she hesitated as to Landric

| | |
|---|---|
| SMOLARZ: | I don't -- there is a lot that I don't know about Mr. Watson, with him not having a psych evaluation done or a drug assessment done I -- I don't feel comfortable saying that -- I don't know what I am trying to say here. My concerns with Mr. Watson are largely the inconsistencies in the visitation, and what I have known of his drug use previously. But with --  I don't know anything further. |

LANDRIC'S COUNSEL:     Okay. So, but for the missed assessments, and I guess any follow-up counseling, that is the reason for your -- your -- hesitation?

SMOLARZ:     Yes, in saying that the drug use is the problem. Now, my main concern that I have seen is the inconsistency throughout with the visitation.

At the close of the hearing, the court terminated both parents' parental rights. In terminating Landric's parental rights, the court noted Landric has five children from his previous relationship, and there was no proof Landric supported any of the children, especially given that he lives on limited means (SSI). It found that Landric had abandoned MC by his failing to visit MC because he was still on marijuana, the impending birth of another child, and the "[un]reasonable[ness]" of Landric wanting to raise an infant given all of these findings. The court found that the evidence weighed against any finding that Landric could provide stability to MC, and because MC could find stability and permanency through adoption, termination was in MC's best interest. The court memorialized its findings in a formal written order entered on February 13, 2025:

> 8. After considering the evidence, the Court finds that the evidence proves the following grounds:
>
> A. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
>
> B. Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(*a*) The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material

support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

C. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

D. Ark. Code Ann. § 9-27-341(b)(3)(B)(iii) The parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.

E. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*) The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:

(3)(A) Have subjected any juvenile to aggravated circumstances.

(B) "Aggravated circumstances: means: (i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification.

II. *No Merit Appeal*

A. Requirements

Arkansas Supreme Court Rule 6-9(j) allows counsel for an appellant in a termination-of-parental-rights case to file a no-merit brief accompanied by a motion to withdraw if, after studying the record and researching the law, counsel determines that there is no meritorious basis for appeal. Ark. Sup. Ct. R. 6-9(j)(1); *Willingham v. Ark. Dep't of Hum. Servs.*, 2025 Ark.

11

App. 74, 706 S.W.3d 761. The argument section of the brief must list all the rulings that were adverse to the appellant "made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose" and explain why each ruling is not a meritorious ground for reversal. Ark. S. Ct. R. 6-9(j)(1)(A); *see also McCullar v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 15, 683 S.W.3d 202. The statement of the case also must contain all rulings adverse to the appellant made by the circuit court at the hearing. Ark. S. Ct. R. 6-9(j)(1)(B); *see also Willingham, supra.* In evaluating a no-merit brief, we decide whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Willingham, supra; McCullar, supra.*

On appeal, we review cases of termination of parental rights de novo but do not reverse unless we find the circuit court's ruling to be clearly erroneous. *McCullar*, 2024 Ark. App. 15, 683 S.W.3d 202. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Anderson*, 2011 Ark. App. 791, at 9, 387 S.W.3d at 316.

### B. Termination Ruling

In order to terminate parental rights, a court must determine that the parent is unfit and that termination is in the best interest of the child. *Rogers v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 417, 654 S.W.3d 706. Proving a parent is unfit requires the court to find at least one statutory ground for termination by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2023); *Rogers, supra.* A finding that termination of parental

12

rights is in the child's best interest requires the court to consider the potential harm to the child caused by returning the child to the parent and the likelihood of the child being adopted if the rights are terminated. Ark. Code Ann. § 9-27-341(b)(3)(A); *Rogers*, *supra*. The finding that termination is in the child's best interest must also be supported by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). "Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established." *Anderson v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 791, at 9, 387 S.W.3d 311, 316.

The circuit court based its order of termination on a multitude of grounds, including Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*, which allows for termination if the parent is found by the court to have subjected the child to aggravated circumstances. The court made the finding of aggravated circumstances in the October 1, 2024 order terminating reunification services. Counsel correctly notes that Landric is procedurally barred from challenging termination of his parental rights under the ground of aggravated circumstances because that finding was originally made in the order terminating reunification services. While a termination-of-parental-rights order may bring up all intermediate orders, including an unappealed order terminating reunification services, the intermediate order must be designated in the notice of appeal. *Thomas v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 457, 610 S.W.3d 688. Landric failed to designate the order terminating reunification services in his notice of appeal and, by failing to do so, effectively waived the right to appeal the ground

13

of aggravated circumstances. *Horton v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 633, at 22, 537 S.W.3d 740, 753.

Regarding best interest, there was uncontroverted evidence that MC was likely to achieve permanency through adoption. The Department's adoption specialist, Ruthann Murphy, testified that MC's potential for adoption is "very high" and that there were no barriers to adoption. The likelihood that MC would achieve permanency through adoption was not challenged. This evidence was sufficient for the circuit court to find that factor of the best-interest analysis had been proved. *See Brabon v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 2, 388 S.W.3d 69; *Reed v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 416, 288 S.W.3d 69; *Cobbs v. Ark. Dep't of Hum. Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004). Likewise, regarding potential harm, the circuit court had sufficient evidence to find that MC would be subject to potential harm if returned to Landric's custody.

Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

In this case, with respect to the potential-harm prong of the best-interest analysis, there was substantial evidence of potential harm if Landric's parental rights were not terminated. Landric failed to complete the services offered by the Department, he failed to comply with the visitation orders, and he made no effort to support MC. Throughout the case, Landric never appealed any finding that it would be contrary to MC's welfare to be

placed in his custody. Therefore, these findings are conclusively established for purposes of appeal. *Taylor v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 264 (citing *Contreras v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510).

## C. Adverse Evidentiary Ruling

In the present case, there was one adverse ruling other than the termination of parental rights. During his testimony, Landric denied that he was ordered by the state of Louisiana, in which some of Racarsha's children were in protective custody, to participate in services as a part of Racarsha's reunification plan because he was living in the home with her. To impeach Landric, the ad litem called the FSW back to the stand and asked her about Landric's testimony. The FSW began to rebut what Landric asserted by stating that she had spoken to the Louisiana caseworker, which prompted Landric's counsel to object on the basis of hearsay. The court overruled the objection and allowed the testimony for rebuttal purposes only. The caseworker then testified that the Louisiana caseworker told her that Landric was ordered to complete services in the Louisiana case.

We review evidentiary rulings under a manifest abuse-of-discretion standard, and we will not reverse absent a demonstration of prejudice. *Joslin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 273, 577 S.W.3d 36. The FSW's testimony about her conversation with the Louisiana caseworker was hearsay because the ad litem was attempting to prove the truth of

that statement.[4]  Hearsay is generally inadmissible unless it falls under one of the recognized exceptions to the hearsay rule. In Arkansas, hearsay is defined as a statement made outside of the current trial or hearing, offered to prove the truth of the matter asserted. Ark. R. Evid. 801(c). However, there was no prejudice in allowing the FSW's testimony, given that the other evidence overwhelmingly supported the circuit court's findings of aggravated circumstances and best interest. *Stedman v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 805; *Day v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 411, 653 S.W.3d 812.

Having carefully examined the record and the no-merit brief, we hold that Landric's counsel has complied with the requirements for a no-merit termination-of-parental-rights appeal and that the appeal is wholly without merit.  We affirm the termination of Landric's parental rights to MC and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

ABRAMSON and HARRISON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.

---

[4]The only exceptions to hearsay where the availability of the declarant is immaterial (as opposed to unavailable) are listed in Ark. R. Evid. 803—none of which pertain to the statement at issue here.